# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| Tammy Devane, individually and on behalf of all others similarly situated, | 1:22-cv-04900 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Instant Brands LLC, | Jury Trial Demanded |
| Defendant | |

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1.     Instant Brands LLC ("Defendant") manufactures, packages, labels, markets, and sells tempered glass measuring cups under the Pyrex brand ("Product").



## I.   PYREX GLASS DESIGNED TO WITHSTAND HEAT

2.   Pyrex products are iconic consumer goods and staples of American kitchens.

3.   Its origins are in Corning, New York, in 1908, when Corning Glass Works developed a borosilicate glass called "Nonex" that could withstand extreme temperatures without breaking.

4.   Originally used for battery jars and railroad lanterns, the glass was adapted for consumer use as a non-breakable glass for oven dishes.[1]

5.   Additional applications of this unique glass were developed, such as the iconic Pyrex measuring cup, with red markings that did not degrade during the cleaning process.

## II.   PRODUCT MARKETED TO WITHSTAND HEAT

6.   The mass adoption of the dishwasher in 1950s allowed consumers to easily clean dishes and other cookware.

7.   Dishwashers apply detergent, heat, hot water, and steam to remove food debris.

8.   Pyrex measuring cups were marketed and sold as capable of being cleaned in dishwashers with no effect on its markings.

9.   The marketing for Pyrex as suitable for dishwashers has been pervasive since this time.

10.   The Rakow Research Library at the Corning Museum of Glass documents the trade advertisements of Pyrex to the retailers who sold its products.

11.   These materials contain model advertisements and promotions for retailers to use to drive sales.

12.   The present and past advertisements tell consumers the Product is "dishwasher safe," which consumers understand to mean it has been treated specifically to endure high temperatures

---

[1] Pyrex combined "pie" and "Nonex."

and detergents yet avoid damage such as discoloration or degradation of the marking lines.

13.    These representation of "Dishwasher Safe" is made at its express directions on the websites of Defendant's retail partners including Amazon.com and Bedbathandbeyond.com.



14.    Defendant's own website describes the Product as "Dishwasher Safe."



15.    Elsewhere on Defendant's website, it describes Pyrex measuring cups as having "easy-to-read measurement marks," made of "Durable high-quality tempered glass," and "dishwasher [] safe."

**Product Details**

Item #: 1146360
UPC #: 401000090716

This 2-cup measuring cup has easy-to-read measurement marks.  Durable, pure Pyrex® glass is microwave, dishwasher and freezer safe, and because it's stain and odor-resistant, it preserves your food's flavor.

- Durable high-quality tempered glass
- Easy-to-read measurement marks
- Resists stains and does not absorb food odors or flavors
- Dishwasher and microwave safe

16.     However, the Product is not dishwasher safe because the measurement markings fade and disappear when the cups are washed in a dishwasher.

17.     The result is that it no longer can meet its intended purpose of measurement.

18.     According to hundreds of customer complaints, the markings can often disappear in as little as one wash.

19.     Most comments mentioning the fading markings indicate this occurs within several months.

> In less than 4 months of use, the measurement markings wore off. I assume that dishwasher cleaning probably cause this, but the manufacturer claims that these are dishwasher safe on the top rack, which is where I placed them. Pyrex quality is not what it used to be. These are useless without the measurement markings.



Joseph M Fontana

★☆☆☆☆ **Measurement Markings Wear Off Quickly**
Reviewed in the United States on March 9, 2022
Size: 3 Piece Set | Style: Measuring Cups | **Verified Purchase**

In less than 4 months of use, the measurement markings wore off. I assume that dishwasher cleaning probably cause this, but the manufacturer claims that these are dishwashe safe on the top rack, which is where I placed them. Pyrex quality is not what it used to be. These are useless without the measurement markings.

20.     That reviewer, and others, included pictures of the Product they purchased which was advertised as dishwasher safe.



21. Numerous reviewers describe how their older Pyrex cups lasted for years without any fading to the markings.

22. The diminished permanence of the markings has occurred for at least three years.

23. The causes are due in part to use of lower quality glass and marking materials.

24. Notwithstanding the representations the Product is "dishwasher safe," it is defective on its own due to the above issues, such that its sale to consumers is unfair and deceptive.

25. Consumers expect products they buy to last for a reasonable length of time under normal usage, and the Product's failure in this respect renders it defective, due to design and/or manufacture.

## III. WARRANTY ISSUES

26. The Product is sold with a "Limited Two-Year Warranty" which the fine print reveals only covers replacement in the event it breaks from oven heat.

27. For the measuring cups which are not used in ovens, the warranty is misleading and without value.

28. Defendant's warranty instructions emphasize that the Product "is designed to be as

versatile as it is long lasting," and that "cleanup is easy – just place your Pyrex® glassware in the dishwasher."

29.     Defendant refuses to honor the warranty for customers who seek coverage for Products with markings that quickly fade.

30.     Defendant's refusal to warrant the Product's markings is unfair and deceptive because the measurement lines are essential to its functioning and utility.

## IV.     CONCLUSION

31.     The Product contains other defects, representations and/or omissions which render it defective and unfit for its purpose, such that its sale is unfair, false and misleading.

32.     The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

33.     As a result of the false and misleading representations and defective design and manufacture, the Product is sold at a premium price, approximately no less than $24.99 for a 3 Piece Glass Measuring Cup Set, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

<u>Jurisdiction and Venue</u>

34.     Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

35.     The aggregate amount in controversy exceeds $5 million, including any statutory or punitive damages, exclusive of interest and costs.

36.     Plaintiff Tammy Devane is a citizen of Plant City, Florida, Hillsborough County.

37.     Defendant Instant Brands LLC is a Delaware limited liability company with a

principal place of business in Downers Grove, Illinois, DuPage County.

38. The sole member of Defendant is Instant Brands Holdings Inc., a Delaware corporation with a principal place of business in Downers Grove, Illinois, DuPage County.

39. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

40. The members of the proposed classes Plaintiff seeks to represent are more than 100, because the Product is sold at thousands of retail and online stores, including grocery stores, big box stores, home goods stores and drug stores, in the States of the proposed classes.

41. Venue is in this District and assignment is in the Eastern Division because Defendant's principal place of business is in DuPage county, which is where the decisions for the marketing, manufacturing, and labeling of the Product occurred.

Parties

42. Plaintiff Tammy Devane is a citizen of Plant City, Florida, Hillsborough County.

43. Defendant Instant Brands LLC is a Delaware limited liability company with a principal place of business in Downers Grove, Illinois, DuPage County.

44. Defendant owns and controls the Pyrex brand, and is responsible for the production and marketing of the Product.

45. Plaintiff saw the representations indicating the Product was dishwasher safe.

46. Even if Plaintiff did not see the dishwasher safe representations, that the Product would be dishwasher safe is implied, because it does not tell consumers, "Do Not Put in Dishwasher."

47. Defendant knows that customers like Plaintiff will put the Product in the dishwasher, and that when they do, a high percentage of the Products will experience faded and disappearing

7

measuring lines.

48.     Plaintiff did not expect the Product would degrade as rapidly as it did under normal conditions of use.

49.     Plaintiff was exposed to and relied on the pervasive marketing of Pyrex products, including the measuring cups, as able to withstand the unique demands of high heat and hot water, and believed they could be used – and necessarily, washed – in a dishwasher without degradation of the markings.

50.     Plaintiff relied on the words, terms coloring, descriptions, layout, packaging, and/or images on the Product, on the labeling, statements, omissions, claims, statements, and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

51.     Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at locations including Walmart, 2602 James L Redman Pkwy, Plant City, FL 33566, between September 2021 and April 2022, and/or among other times.

52.     Plaintiff bought the Product at or exceeding the above-referenced price.

53.     Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, requirements, instructions, features, and/or components.

54.     Plaintiff paid more for the Product than she would have paid had he known the representations were false and misleading, as he would not have bought it or paid less.

55.     Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance its representations are consistent with its composition.

56.     Plaintiff is unable to rely on the labeling and representations not only of this Product,

but other similar kitchen goods marketed as dishwasher safe and suitable for sale, because he is

unsure whether those representations are truthful and their design and manufacture is defective.

### Class Allegations

57.  Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Florida and Illinois Class:** All persons in the States of Florida and Illinois who purchased the Product during the statutes of limitations for each cause of action alleged; and

> **Consumer Fraud Multi-State Class**: All persons in the States of Alabama, Montana, Alaska, Texas, Arizona, New Mexico, Mississippi, Utah, Nebraska, South Carolina, Tennessee, and Virginia who purchased the Product during the statutes of limitations for each cause of action alleged.

58.  Common questions of issues, law, and fact predominate and include whether

Defendant's representations were and are misleading and if Plaintiff and class members are entitled

to damages.

59.  Plaintiff's claims and basis for relief are typical to other members because all were

subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

60.  Plaintiff is an adequate representative because his interests do not conflict with other

members.

61.  No individual inquiry is necessary since the focus is only on Defendant's practices

and the class is definable and ascertainable.

62.  Individual actions would risk inconsistent results, be repetitive and are impractical

to justify, as the claims are modest relative to the scope of the harm.

63.  Plaintiff's counsel is competent and experienced in complex class action litigation

and intends to protect class members' interests adequately and fairly.

64.  Plaintiff seeks class-wide injunctive relief because the practices continue.

Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla.
Stat. § 501.201 et seq. and Illinois Consumer Fraud and Deceptive
Business Practices Act ("ICFA"), 815 ILCS 505/1, et seq.

65. Plaintiff incorporates by reference all preceding paragraphs.

66. Plaintiff relied on the representations, omissions, and sale of the Product to consumers to believe it was not defective, was dishwasher safe and that it would not rapidly degrade with normal use to the point where it failed to fill its purpose as a measuring cup because the markings had become faint and/or completely erased.

67. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Violation of State Consumer Fraud Acts
(Consumer Fraud Multi-State Class)

68. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

69. The members of the Consumer Fraud Multi-State Class were harmed in the same manner as Plaintiff, and reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statutes invoked by Plaintiff.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, et seq.

70. The Product was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff that it was not defective, and was dishwasher safe, that it would not rapidly degrade with normal use to the point where it failed to fill its purpose as a measuring cup because the markings had become faint and/or completely erased.

10

71.     Defendant directly marketed the Product to Plaintiff and consumers through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, and targeted digital advertising.

72.     Defendant knew the product attributes that potential customers like Plaintiff were seeking, such as a measuring cup that was dishwasher safe, that would not rapidly degrade with normal use to the point where it failed to fill its purpose as a measuring cup because the markings had become faint and/or completely erased, and developed its marketing and labeling to directly meet those needs and desires.

73.     The representations were conveyed in writing and promised the Product would be defect-free, and Plaintiff understood this meant that it was dishwasher safe, that it would not rapidly degrade with normal use to the point where it failed to fill its purpose as a measuring cup because the markings had become faint and/or completely erased.

74.     Defendant affirmed and promised that the Product was dishwasher safe, that it would not rapidly degrade with normal use to the point where it failed to fill its purpose as a measuring cup because the markings had become faint and/or completely erased.

75.      Defendant described the Product so Plaintiff and consumers believed it was dishwasher safe, that it would not rapidly degrade with normal use to the point where it failed to fill its purpose as a measuring cup because the markings had become faint and/or completely erased, which became part of the basis of the bargain that it would conform to its affirmations and promises.

76.     Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

77.     This duty is based on Defendant's outsized role in the market for this type of product,

11

custodian of the Pyrex brand, the original and pioneer brand of glass-based kitchen cookware.

78.    Plaintiff recently became aware of Defendant's breach of the Product's warranties.

79.    Plaintiff provides or will provide notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's express and implied warranties.

80.    Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through product reviews and online forums.

81.    The Product did not conform to its affirmations of fact and promises.

82.    The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if it was dishwasher safe, that it would not rapidly degrade with normal use to the point where it failed to fill its purpose as a measuring cup because the markings had become faint and/or completely erased.

83.    The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because she expected it was dishwasher safe, that it would not rapidly degrade with normal use to the point where it failed to fill its purpose as a measuring cup because the markings had become faint and/or completely erased, and she relied on Defendant's skill and judgment to select or furnish such a suitable product.

Negligent Misrepresentation

84.    Defendant had a duty to truthfully represent the Product, which it breached.

85.    This duty is based on its position, holding itself out as having special knowledge and

12

experience this area, custodian of the Pyrex brand, the original and pioneer brand of glass-based kitchen cookware.

86. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Pyrex, a globally recognized and iconic brand.

87. Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

## Fraud

88. Defendant misrepresented and omitted that the Product was not defective, dishwasher safe, that it would not rapidly degrade with normal use to the point where it failed to fill its purpose as a measuring cup because the markings had become faint and/or completely erased.

89. The records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity and deception, through statements and omissions.

## Unjust Enrichment

90. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

## Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

   **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the Class;

2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

13

3. Awarding monetary, statutory, and/or punitive damages pursuant to applicable laws;

4. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

5. Other and further relief as the Court deems just and proper.

Dated:   September 10, 2022

                                                    Respectfully submitted,

                                                    /s/Spencer Sheehan
                                                    Sheehan & Associates, P.C.
                                                    60 Cuttermill Rd Ste 412
                                                    Great Neck NY 11021
                                                    (516) 268-7080
                                                    spencer@spencersheehan.com